HELEN G. AUSTIN ET AL. *v.* THE HOUSING AUTHORITY
OF THE CITY OF HARTFORD ET AL.

INGLIS, C. J., BALDWIN, WYNNE, DALY and ALCORN, Js.

Argued March 8—decided April 18, 1956

*Maxwell M. Merritt* and *J. Read Murphy,* for the plaintiffs.

*Frederick H. Wiggin,* with whom, on the brief, was *John W. Barnett,* for the defendant Firemen's Mutual Insurance Company.

*Morris Apter,* for the named defendant et al.

INGLIS, C. J.  In this action the plaintiffs seek an injunction restraining the commissioners of the Hartford Housing Authority, hereinafter referred

to as the defendants, and the housing authority itself from awarding any contract to, and making payments pursuant to any contract of fire and extended coverage insurance with, the Firemen's Mutual Insurance Company, hereinafter called Firemen's, and an injunction requiring the defendants to reject the bid of Firemen's as not being that of the lowest responsible bidder and directing them to award the contract to The Hartford County Mutual Fire Insurance Company, hereinafter referred to as The Hartford County. The case has been reserved for the advice of this court, and the following facts have been stipulated.

The plaintiffs are all taxpayers of the city of Hartford. In May, 1954, the housing authority publicly invited bids for the furnishing of fire and extended coverage insurance for various properties owned by it. This invitation directed that all bids should be submitted on a bid form which called for the bidder to state for each property to be insured three figures: "5 year deposit premium," "5 year estimated dividend," and "5 year net premium." In the invitation the defendants reserved the right to reject any or all bids. On June 24, 1954, twelve bids submitted in response to the invitation were opened. One submitted by The Hartford County through an agent indicated that it would charge a fixed five-year gross premium of $86,997.45 and would pay no dividend, so that the net premium would be the same as the gross. Another, submitted by the Firemen's, stated that its five-year gross premium would be $114,567 and its estimated dividend $57,283.50, leaving as its five-year net premium $57,283.50. The bid of The Hartford County was the lowest of all the bids which made no deduction from gross premiums for dividends, but Firemen's bid had the lowest net

premium. The "dividend" in Firemen's bid is the return of the unused or unabsorbed premium and is estimated on the basis of the returns made to policyholders over a period of more than ten years previous to 1954. It would be payable to the housing authority at the end of the five-year term, but it might lawfully be more or less than the amount estimated depending upon the return actually voted by the directors of the company in the light of its experience. All bids submitted were based on furnishing insurance coverage under the Connecticut standard fire insurance policy, which permits a policy to be canceled by the insurer at any time upon refunding the excess of the paid premium over the earned premium. General Statutes, app. A, p. 3232.

Although on June 28, 1954, a temporary injunction was issued restraining the housing authority from awarding the contract to Firemen's, that injunction was later dissolved by stipulation, and the policy was issued to the housing authority by Firemen's. For more than ten years before May, 1954, Firemen's had returned to its policyholders having five-year contracts dividends of not less than 50 per cent, and this fact was known to the defendants when the contract was awarded to Firemen's. Both Firemen's and The Hartford County are mutual companies and are capably managed, financially sound and able to write the insurance in question. The housing authority and the defendants, in accepting the bid of Firemen's and awarding the contract to it, did so in good faith without fraud and in what they considered the best interests of the authority and the public.

The properties of the housing authority to be covered by the insurance were of two kinds. One portion consisted of so-called low rental housing,

and the other of moderate rental housing. With reference to the first, the housing authority has a contract with the federal public housing administration by the terms of which the former is subsidized for losses incurred as a result of making housing available for persons of low income. This contract requires the housing authority to administer its affairs in accordance with regulations promulgated by the public housing administration. Certain of those regulations concern competitive bidding for fire and extended coverage insurance. They provide that in evaluating a bid made by a dividend-paying company as compared with one made by a fixed-premium company, "interest at not exceeding four per cent per annum for the policy period should be computed on the difference between the deposit premium of the dividend-paying company and the fixed premium of the fixed premium company and added to the anticipated net premium charged by the dividend-paying company."

The moderate rental houses were constructed with funds in part borrowed from the state of Connecticut. The housing division of the public works department of the state of Connecticut promulgates regulations for the administration of moderate rental projects by local housing authorities. As amended on December 6, 1950, these regulations, in dealing with the award of insurance contracts, provided that with reference to bids with anticipated dividends the factors to be considered were whether the management of the company was sound and whether, on the basis of past dividend records, it seemed likely that the dividend record of the company would be maintained.

Although the stipulation for reservation sets forth fifteen questions upon which the advice of this court

is sought,[1] in reality there are only three main issues: (1) Are fire and extended coverage policies of insurance within the purview of § 340c of the 1953 Cumulative Supplement to the General Statutes, so that

[1] "(a) Does the awarding of said insurance contract to the defendant Firemen's constitute a financial burden upon the plaintiffs and other taxpayers of the City of Hartford such as to cause legal damage by reason of said contract award?

"(b) Has any of the plaintiffs a justiciable interest in the controversy described in the pleadings?

"(c) Is the defendant Firemen's estimated future dividend or anticipated return of unabsorbed premium deposit lawfully deductible from Firemen's stated deposit premium for the purpose of the defendant Housing Authority making an award of the contract of said insurance in view of the fact that defendant Firemen's has no legal obligation to declare or pay any future dividend or return any part of the premium deposit?

"(d) Was and is the bid for said insurance made by the plaintiff Hartford County Mutual the lowest bid according to law which was submitted to the defendant Housing Authority?

"(e) Was and is the plaintiff Hartford County Mutual the lowest responsible bidder?

"(f) Is the awarding of the contract of said insurance to defendant Firemen's ultra vires and illegal as being in contravention of Section 340c of the 1953 Supplement to the General Statutes of Connecticut?

"(g) Must the defendant Housing Authority, in compliance with law, make the contract or contracts of said insurance with the plaintiff Hartford County Mutual as being the lowest responsible bidder?

"(h) Do the provisions of Section 340c of the 1953 Supplement to the General Statutes require that the contract of insurance here involved shall be awarded to the lowest responsible bidder?

"(i) Is a contract or policy of fire insurance work, supplies or personal property within the meaning of Section 340c of the 1953 Supplement to the General Statutes?

"(j) Is the action of the defendant Housing Authority and the other defendants in awarding and entering into the contract of insurance a purely ministerial act involving no element of judgment or discretion?

"(k) Did the defendant Housing Commissioners have the duty and privilege of obtaining the most advantageous terms and of determining the probable lowest net cost of insurance as indicated by the use of sound business judgment?

"(l) Should sound business judgment be exercised by the Housing Commissioners after consideration of all pertinent facts including,

the housing authority was required to invite bids for the awarding of contracts for the furnishing of such policies and to award the contracts to the lowest responsible bidder? (2) In awarding the contract to Firemen's, did the defendants comply with the statute? (3) Do the plaintiffs have a justiciable interest which gives them a standing to maintain this action?

The statute which controls the decision of this case is § 340c of the 1953 Cumulative Supplement (as amended, Cum. Sup. 1955, § 440d). It defines the powers of municipal housing authorities. It contains this provision: "All contracts to be made or let for work or supplies, or for purchases of personal property of every description, shall be publicly advertised for the purpose of receiving bids upon the same, . . . provided the several parts of such work, supplies or personal property shall, together, involve the expenditure of more than five hundred dollars. The bids received in response to such public advertisement shall be publicly opened . . . and the contract or award shall be made by the authority with or to the lowest responsible bidder." There follows a provision permitting a waiver of the quoted

---

among other things, the probable anticipated return of unabsorbed premiums or dividends at the end of the term of insurance?

"(m) Did the defendant Housing Commissioners upon all the facts and circumstances lawfully determine the bid of defendant Firemen's to be (i) the most advantageous bid, or (ii) the bid of the lowest responsible bidder?

"(n) Did the defendant Housing Commissioners have the privilege and the duty of considering among determinative factors in accepting a bid for insurance the contract with the Federal Public Housing Administration . . . and the regulations of such Administration, and also the regulations issued by the Administrator of the Connecticut State Housing Authority?

"(o) Should judgment be entered in favor of the plaintiffs or the defendants?"

requirement under certain circumstances, but that provision is not pertinent to this case.

The decision of the first two issues stated above requires the interpretation of § 340c. In the interpretation of any statute it is essential to bear in mind the purpose of its enactment. *Cassidy* v. *Tait,* 140 Conn. 156, 160, 98 A.2d 808. Such requirements as are contained in the statute in question "are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable, and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest." 10 McQuillin, Municipal Corporations (3d Ed.) § 29.29.

Section 340c requires the taking of bids for contracts "for purchases of personal property of every description." This is very broad. It includes all kinds of personal property. The term "personal property" embraces everything, not coming under the denomination of real estate, which is the subject of ownership and has an exchangeable value. *Stanton* v. *Lewis,* 26 Conn. 444, 449; 73 C.J.S. 170, § 8. "Insurance is a contract, and as such in legal contemplation is property . . . ." 1 Couch, Insurance, § 3; *Frick* v. *Lewellyn,* 298 F. 803, 808, aff'd, 268 U.S. 238, 45 S. Ct. 487, 69 L. Ed. 934. Not only does a contract of fire insurance come within the generally accepted definition of personal property but, when the purchase of the policy is to be with public funds, it is strictly in accord with the purpose of a lowest responsible bidder statute to require that the policy be

purchased only from the lowest bidder. The opportunity to expend public money improvidently is as great in the purchase of a fire insurance policy as in the purchase of any other personal property. Accordingly, we conclude that the requirements of § 340c extend to the purchase of standard form policies of fire and extended coverage insurance.

The next question is whether the award of the contract for insurance to Firemen's was in violation of the statute. Under similar lowest responsible bidder statutes, it is well settled that when the products offered for sale by two or more unquestionably responsible bidders are substantially the same and the bids are made on the same basis, so that the differences in the bids can be measured mathematically, the authority awarding the contract has no discretion. He must make the award to the one whose bid is actually the lowest. *Otter Tail Power Co.* v. *Village of Elbow Lake,* 234 Minn. 419, 423, 49 N.W.2d 197; 43 Am. Jur. 786, § 44. Of necessity, however, the determination whether a bidder is "responsible," when there is any question concerning his responsibility, requires the exercise of judgment, and therefore the making of the award is not always merely a ministerial function. Often, also, the product which one bidder offers differs substantially from that offered by another. In such a situation the public authority must exercise sound judgment to determine whether the product of the higher bidder is so much better or so much more advantageous to the public that this consideration more than offsets the difference in the amounts of the bids. *Adley* v. *Bridgeport,* 3 Conn. Sup. 342, 349; 10 McQuillin, Municipal Corporations (3d Ed.) p. 347. The reason for all this is that the purpose of the statute is to assure a proper expenditure of public money, and this

often requires the exercise of sound business judgment.

It is true that the question presented in the case at bar is different from that presented when the products offered by the various bidders differ from each other. In the case at bar the difference between the bids does not lie in the property offered. It lies in the fact that the amounts bid are not stated in the same form. The bids are not comparable on a mathematical basis alone. The bid of The Hartford County is for a fixed net premium. To ascertain the net premium charge as set forth in Firemen's, it is necessary to estimate how much that company will refund in the form of a dividend at the end of the policy period. Whether it will work out to the advantage of the housing authority to purchase the policy upon which the exact amount of the premium is known definitely in advance or the policy the net premium on which depends to some extent on the future experience of the insurance company can be determined only by the exercise of sound business judgment. It is, however, a question which must be determined if the purpose of the statute is to be accomplished. There can be no doubt, therefore, that it was the duty of the defendants to determine, by using their sound judgment, which bid was in reality the lowest.

The case of *Burt* v. *Cleveland,* 76 Ohio App. 451, 62 N.E.2d 274, is the only one which is cited or has come to our attention in which the facts are at all analogous to those in the case at bar. In that case it appeared that a contract for insurance had been awarded to Firemen's on a bid by it of a premium charge of $109,982. The next lowest bid was $149,195. The Firemen's policy was, however, subject to assessment up to five times the amount of the premium.

In spite of this possibility of assessment, the award of the contract to Firemen's was upheld by the court. To quote from the opinion (p. 463), "[c]ertainly the [public authority] had the right in the light of the undisputed facts, in the exercise of sound judgment, to conclude that the bid of 'Firemen's' was the lowest responsible bid received on its proposal for fire insurance with extended coverage."

When, as in the present case, it becomes necessary for the authority awarding a contract to exercise its judgment in order to determine which is the lowest bid, it would be improper for a court to override the decision reached unless it appeared that by the exercise of sound judgment the authority could not reasonably have reached the decision it did. 43 Am. Jur. 786, § 44. Upon all of the facts in the present case, we cannot say that the defendants failed to exercise sound judgment in deciding that the bid of Firemen's was actually the lowest bid submitted. Consequently, we must hold that the award of the contract to that company was in compliance with § 340c.

Question (n), propounded in the stipulation, is subordinate to the issue which we have just been considering. It is whether the defendants had the privilege and duty of considering, among determinative factors, the regulations which form a part of the contract with the federal public housing authority and the regulations promulgated by the state housing authority. This question is not in proper form, nor is an answer to it necessary for the decision of the case, since it does not appear in the stipulation of facts that the defendants felt themselves controlled by these regulations when it came to a determination of which was the lowest responsible bidder. It is, of course, obvious that such regula-

tions would have no validity if they conflicted with § 340c. They do not, however, so conflict.

The remaining main question in the case is whether the plaintiffs have any standing to maintain the action. One of the plaintiffs is The Hartford County, an unsuccessful bidder. The invitation to bid provided that the housing authority might reject any or all bids. Consequently, this plaintiff has no cause of action predicated on the invitation to bid. If it has any justiciable rights, they must arise by virtue of the statute. The better authority holds that lowest responsible bidder statutes are enacted solely for the benefit of the public and in no sense create any rights in those who submit bids. 10 McQuillin, Municipal Corporations (3d Ed.) § 29.29. Therefore, The Hartford County, as an unsuccessful bidder, has no justiciable right under the statute.

The Hartford County is also a taxpayer of the city of Hartford, as are all the other plaintiffs. As taxpayers, they may maintain an action such as this only if an improper award of the contract would result directly or indirectly in an increase in taxes or would in some other fashion cause them irreparable injury. *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294; *Cassidy* v. *Waterbury,* 130 Conn. 237, 245, 33 A.2d 142. The housing authority is a distinct corporate entity. Cum. Sup. 1955, § 437d. It is not an agency of the city of Hartford. The city is not responsible for the debts of the authority. It is true that in the past the city has donated real property to the authority and has loaned it money and may do so again. The loans have been repaid, and even if they had not been, it does not appear that there is enough likelihood of the authority's becoming insolvent to put the city in any danger of suffering loss for that reason. Consequently, the

taxpayers of the city have no greater interest in the proper management of the affairs of the housing authority than they would have in the management of a bank in which city funds are deposited or of any other corporation with which the city does business. Improper management, if there were any, of the business of the housing authority could not in itself increase taxes in the city of Hartford. It follows that the plaintiffs in their capacity as taxpayers of the city of Hartford have no standing to maintain this action.

Questions (a), (b), (d), (e), (f), (g) and (j) are answered in the negative. Questions (c), (h), (i), (k), (l) and (m) are answered in the affirmative. Questions (n) and (o) will not be answered because they are not in proper form.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.