## DONALD ST. JOHN *v.* STATE OF CONNECTICUT (4049)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued November 5, 1986—decision released January 27, 1987

*David Fite Waters,* for the appellant (plaintiff).

*Harry W. Hultgren,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (state).

DUPONT, C. J. This is an action instituted by the plaintiff against the state for specific performance of an alleged contract and for a declaratory judgment arising out of the department of transportation's (department)

solicitation of bids for the sale of certain property.[1] The plaintiff appeals from the trial court's rendition of judgment for the state. The two principal issues raised by the plaintiff in this appeal are (1) whether the sale of the subject property required the approval of the state properties review board (board) where that board failed to act within a year after the plaintiff's bid was received, and (2) whether the board's exercise of its statutory right to reject the plaintiff's bid violated the plaintiff's due process rights.[2]

The facts are largely undisputed. In 1977, the department obtained an appraisal of certain property in preparation for the sale of such property pursuant to General Statutes § 13a-80.[3] The appraisal, based upon the prem-

---

[1] The original complaint filed by the plaintiff sought a decree of specific performance of the alleged contract. The plaintiff thereafter amended his complaint by adding allegations which claimed that the actions of the state were unconstitutional, and which sought the additional relief of a judgment declaring the conduct of the defendant to be unconstitutional.

[2] On appeal, the plaintiff raised a third claim of error alleging that the trial court erred in failing to apply the adverse inference rule of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), against the state because it failed to produce any witnesses from the board. This issue, however, was not raised by the plaintiff or decided in the trial court, and the plaintiff has not shown any exceptional circumstances to warrant this court's review of this claim. See *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672, 500 A.2d 1324 (1985).

In its brief, the state has also raised an issue claiming that the trial court should have dismissed this suit on the basis of the doctrine of sovereign immunity. The trial court, on at least two occasions, concluded that dismissal of the suit was not appropriate because the doctrine of sovereign immunity was not a valid defense to this cause of action. The doctrine of sovereign immunity does not bar suits seeking a declaratory judgment against the state where unconstitutional acts are claimed; *Sentner* v. *Board of Trustees,* 184 Conn. 339, 439 A.2d 1033 (1981); or where contractual rights exist. *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 467 A.2d 674 (1983). The state's claim was originally raised in its cross appeal which was dismissed for failure to pursue it with due diligence. The state has failed to file the requisite papers raising such claims as required by Practice Book § 4013 (a) (1) (formerly § 3012), and we therefore do not address the issue.

[3] General Statutes § 13a-80 provides that "[t]he commissioner, with the advice and consent of the secretary of the office of policy and management

ise that the highest and best use of the land was for parking, valued the property at $18,000. On the basis of such appraisal, the department thereafter solicited bids from the general public at a minimum purchase price of $18,350. Each bidder was specifically notified in the real property bid form that "all successful or accepted bids must be approved by . . . the State Properties Review Board . . . ."[4]

The plaintiff submitted a bid in the amount of $26,850 and a deposit of $1500 to purchase the property. On October 5, 1977, the department notified the plaintiff that his bid was the highest, and that it was "prepared to recommend that the sale of this property to [the plaintiff] be approved by the . . . State Properties Review Board."

The board notified the department on September 26, 1978, that it rejected the sale because the board did not agree that the highest and best use of the land stipulated in the appraisal was correct. The board stated instead that the highest and best use of the land was as multiple family dwellings, which would command a higher market value.[5] The department thereafter

and the state properties review board may sell, lease and convey, in the name of the state, or otherwise dispose of, or enter into agreements concerning, any land and buildings owned by the state and obtained for or in connection with highway purposes or for the efficient accomplishment of the foregoing purposes or formerly used for highway purposes, which real property is not necessary for such purposes."

[4] The record indicates that the real property bid form used by each bidder to submit his bid stated: "It is understood that all successful or accepted bids must be approved by the Commissioner of Transportation, the Commissioner of Finance and Control, the State Properties Review Board, and the State's Attorney General . . . ."

[5] The record indicates that the board reached its conclusion on the basis of an appraisal of the property conducted on August 15, 1978, which set the fair market value of the property at $32,000. The property was reappraised on April 17, 1979. That appraisal found that the highest and best use of the land was as condominiums, and appraised the fair market value of the property at $100,000.

notified the plaintiff on October 3, 1978, that his bid had been denied by the board, and that his $1500 deposit would be returned to him. The plaintiff was also informed that the property was being reappraised and would be the subject of a future public bid.

The plaintiff's case was referred to an attorney trial referee, who concluded that the failure of the board to approve the sale was fatal to the plaintiff's cause.[6] An alternative conclusion was made that if the trial court found that such approval by the board was not a condition precedent to the approval of the sale, the referee would then find that the length of time in which the state acted was unreasonable, and would order specific performance.[7] The referee concluded that *"otherwise, judgment should enter for the defendant."* (Emphasis added.)

The trial court rendered judgment in favor of the state in accordance with the report of the attorney trial referee. In reaching its decision, the trial court specifically accepted the referee's conclusion that the failure of the board to approve the sale was fatal to the plaintiff's cause, and rejected the alternative recommendation for judgment made by the referee.[8]

---

[6] The attorney trial referee stated in his conclusion that "[t]he failure of the State Properties Review Board to approve the sale, as mandated by General Statutes § 13a-80, is fatal to the plaintiff's cause."

[7] The alternative conclusion stated: *"In the alternative,* if the trial court should find that the approval of the State Properties Review Board is not a condition precedent to the approval of the within sale, the undersigned would conclude that the length of time between the approval of the sale by the defendant's Office of Policy and Management on October 7, 1977, and the notification to the plaintiff on October 3, 1978, that the plaintiff's bid was denied by the defendant's Properties Review Board is unreasonable and would order specific performance of the sale; otherwise, judgment should enter for the defendant." (Emphasis in original.)

[8] The trial court entered an order rendering judgment for the state in accordance with the report of the attorney trial referee on February 14, 1985. In its memorandum of decision filed in response to the state's motion for articulation, the trial court stated: "The attorney state referee added

## I

In his first claim of error, the plaintiff alleges that the board's approval of the sale was a waivable requirement, and that the trial court erred in not holding that the state waived such requirement by its unreasonable delay in notifying the plaintiff of its denial of his bid. The plaintiff relies primarily upon principles of contract law to support his claim. The plaintiff asserts that the actions of the state necessitated a decree of specific performance in the present case under alternative theories of estoppel or waiver.[9]

Although the plaintiff's claim rests upon well established precepts of contract law, his argument assumes the existence of a legally recognizable contract. The record in the present case, however, indicates that no contract existed between the parties. A solicitation for bids for the purchase of property is *not* a contract. *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 702, 448 A.2d 180 (1982). Rather, a bid which has been submitted in response to such a solicitation has been construed as merely a binding offer to make a contract. Id. Thus, only when such offer is accepted does the bid give rise to a contract between the parties.

a paragraph 20 to his report with an alternative recommendation for judgment if paragraph 19 'was not accepted.' Paragraph 19, however, is accepted by the undersigned, i.e., that 'the failure of the State Properties Review Board to approve the sale, as mandated by General Statutes § 13a-80, is fatal to the plaintiff's cause.' "

[9] We note that the plaintiff has standing to raise this claim on appeal. Although it has consistently been held that an unsuccessful bidder has no standing to challenge the decision of a state agency to enter into a public contract; *Ardmare Construction Co* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 674 (1983); the plaintiff claims that he is more than an unsuccessful bidder in this case. It is the plaintiff's claim that he is a party to an express or implied contract. A party to a contract with the state, as opposed to an unsuccessful bidder, does have standing to appeal.

Our Supreme Court has long recognized these principles in relation to municipal bidding laws. Id.; *Austin* v. *Housing Authority,* 143 Conn. 338, 122 A.2d 399 (1956). The court has noted that the purpose of such bidding laws is to benefit the public by guarding against such evils as favoritism, fraud and corruption in the award of municipal contracts. *Austin* v. *Housing Authority,* supra. In rejecting bids, " '[a]ll that is required of officials is that they observe good faith and accord all bidders just consideration, thus avoiding favoritism and corruption.' " *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* supra, 703. The courts "will only intervene to prevent the rejection of a bid when the obvious purpose of the rejection is to defeat the object and integrity of competitive bidding." *Joseph Rugo, Inc.* v. *Henson,* 148 Conn. 430, 434, 171 A.2d 409 (1961); see also *Spiniello Construction Co.* v. *Manchester,* 189 Conn. 539, 456 A.2d 1199 (1983). We hold that the same principles apply with equal force when applied to the solicitation and rejection of bids by a state agency for the purchase of state property. See *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 467 A.2d 674 (1983).

In the present case, the department solicited bids for the purchase of excess property pursuant to General Statutes § 13a-80. The provisions of § 13a-80 permit the commissioner of transportation to sell such land only with the consent of the board. For this reason, the real property bid form expressly informed the bidders that the successful bid must be approved by the board. Moreover, the letter from the department to the plaintiff informing him that his bid was the successful bid stated that the department was prepared to *recommend* that the sale of the property be approved by the board. Such letter cannot be construed as an acceptance of the plaintiff's offer, but rather a recommendation for its acceptance. The department was without author-

ity to accept the offer of the plaintiff or otherwise to enter into a valid contract with the plaintiff without the statutorily mandated approval of the board.

The plaintiff, however, asserts that the board's unreasonable delay in rejecting the sale of the property mandates a finding that the state waived the requirement of such board approval. The plaintiff claims that the state did not act in good faith or fair dealing and is therefore barred from preventing the sale of the property. In essence, the plaintiff asserts that the failure of the board to act within a reasonable amount of time constituted an acceptance of the plaintiff's bid.

The plaintiff relies primarily on the attorney trial referee's conclusions to support his claims. Practice Book § 436 provides that a trial referee may make alternative conclusions "so that the judgment rendered [by the trial court] will depend upon which of the alternative conclusions the facts are found legally to support." The trial court, in rendering its judgment, may adopt one of the conclusions and reject the other. Moreover, the trial court may strike out a fact improperly found by the attorney trial referee. Practice Book § 443. In the present case, the trial referee concluded that the time period in which the state acted was unreasonable *only if* the trial court rejected the referee's primary conclusion that the board's failure to approve the sale was fatal to the plaintiff's cause. The trial court did not reject that conclusion, and therefore did *not* accept the referee's alternative conclusion that the time period was unreasonable. Thus, the trial court did not err in failing to hold that the board waived its right to disapprove the sale of the property on that basis.

Nor can we conclude that the trial court erred in failing to hold that the state did not act in good faith. The board rejected the sale of the property to the plaintiff

for appropriate reasons.[10] It was within the discretion of the board to reject the initial appraisal of the property and to refuse to accept any bid submitted based upon such appraisal. Because the board's decision exhibited an honest exercise of discretion which neither promoted favoritism nor defeated the object and integrity of competitive bidding, its decision is not an indication that the defendant acted in bad faith. See *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* supra, 703.

The plaintiff also alleges that the state is estopped from denying the sale of the property because of the affirmative actions of the state and the prior course of conduct between the parties. The plaintiff maintains that the state accepted his bid and retained his check for a year. Moreover, he asserts that in his prior dealings with the state, notification of acceptance of his bid was given by the board within two months. For these reasons, the plaintiff claims that the doctrine of estoppel is applicable in the present case. The plaintiff, however, failed to raise the doctrine of estoppel at the trial court level. It has long been recognized that only in the most exceptional circumstances can and will an appellate court consider a claim that has not been raised and decided in the trial court. See, e.g., *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 186 n.1, 501 A.2d 745 (1985); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672, 500 A.2d 1324 (1985). The plaintiff has not asserted any such exceptional circumstances, and we therefore shall not consider this portion of the plaintiff's claim. We conclude that the trial court did not err in holding that the board's refusal to approve the sale was fatal to the plaintiff's action for specific performance.

[10] General Statutes § 4-26a (f) provides that in reviewing the sale of any property by the commissioner of transportation, the state properties review board "shall consider all aspects of the proposed actions, including feasibility and . . . the prudence of the business method proposed."

## II

The plaintiff's second claim of error is that the trial court erred in failing to declare the conduct of the board in refusing to approve the sale to be illegal and unconstitutional. As part of this claim, the plaintiff asserts that the legislature has vested the board with unlimited discretion and unreviewable power without any standards so as to deprive him of his federal and state constitutional rights to due process.

The initial inquiry that must be made by this court in addressing this issue is whether the plaintiff has standing to assert this claim.[11] "In order for a party to challenge the constitutionality of a statute or an action predicated thereon he must have standing." *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 48–49, 357 A.2d 472 (1975). The primary focus of the question of standing is whether the party has a "personal stake in the outcome of the controversy." *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962).

In the present case, the plaintiff has no property or justiciable rights which establish his standing to raise this claim. As previously noted, the plaintiff has no contract right in this case because no contract existed between the parties. Furthermore, the plaintiff has no cause of action predicated on the invitation to bid. See *Ardmare Construction Co.* v. *Freedman,* supra, 504; *Austin* v. *Housing Authority,* supra, 349. The process involved in the solicitation of bids has been established for the benefit of the public, and does not create any rights in those who submit bids. *Ardmare Construction Co.* v. *Freedman,* supra. Thus, even as the high-

[11] Neither party has raised this issue but "we have no alternative but to address the issue." *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 498 n.4, 467 A.2d 674 (1983).

est bidder, the plaintiff has no justiciable rights. See J. Donnelly, Public Contracts § 147, p. 230. The plaintiff did not obtain a vested or property interest in the contract merely because he submitted the highest bid. A successful bidder cannot claim any contractual rights until he has been awarded the contract.

Where no contract exists, a successful bidder whose bid was eventually rejected by an agency's decision has standing to appeal only "where fraud, corruption or acts undermining the objective and integrity of the bidding process" are alleged. *Ardmare Construction Co. v. Freedman,* supra, 504–505. In the present case, the board did not act in any way which could be construed to undermine the competitive bidding process. In rejecting the sale of the property to the plaintiff, the board did not discriminate or act in bad faith. The plaintiff therefore has no standing to challenge the constitutionality of the board's conduct on this basis.

Nor may the plaintiff maintain an action based upon the fact that he is a taxpayer. "[T]axpayers may maintain an action such as this only if an improper [rejection] of the contract would result directly or indirectly in an increase in taxes or would in some other fashion cause them irreparable injury." *Austin* v. *Housing Authority,* supra. No such situation is presented here.

We conclude, therefore, that the plaintiff has no standing to maintain this claim.[12]

There is no error.

In this opinion the other judges concurred.

---

[12] Even if the plaintiff had standing for this court to reach this issue, we note that the standards imposed by General Statutes § 4-26a (f) are not so nebulous as to require a holding that the board has an impermissible delegation of authority without sufficient guidelines. See *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 512 A.2d 152 (1986).