FAIRCHILD HEIGHTS RESIDENTS
ASSOCIATION, INC. *v.*
FAIRCHILD HEIGHTS,
INC.
(AC 31661)

Harper, Lavine and Mihalakos, Js.

Argued November 17, 2010—officially released September 27, 2011

*Douglas J. Varga*, for the appellant (plaintiff).

*Colin P. Mahon*, with whom was *Thomas T. Lonardo*, for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, Fairchild Heights Residents Association, Inc., appeals from the judgment of the trial court, rendered after a trial to the court.[1] The defendant, Fairchild Heights, Inc., claims that the plaintiff failed to exhaust its administrative remedies prior to bringing this action.[2] We agree that the plaintiff failed to exhaust

[1] The plaintiff raised the following claims in its appeal: the court improperly (1) concluded that a letter from the department of consumer protection was entitled to preclusive effect, (2) failed to adjudicate the plaintiff's allegations that the defendant was in violation of chapter 412 of the General Statutes and (3) found that the plaintiff produced insufficient evidence to prevail on its allegation that the defendant violated ordinances of the city of Shelton. We need not reach the merits of the plaintiff's appeal.

[2] The defendant did not file a motion to dismiss in the trial court but raised the plaintiff's failure to exhaust its administrative remedies in its posttrial brief. The plaintiff responded to the claim in its posttrial brief. The court, however, did not address the issue in its memorandum of decision. Neither party filed a motion for articulation; see Practice Book § 66-5; or otherwise raised the jurisdictional issue in the trial court again.

"Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement

its administrative remedies and that the trial court otherwise lacked jurisdiction and should have dismissed the case.

The following procedural history sets forth the facts necessary to resolve the question of subject matter jurisdiction and the plaintiff's appeal. The plaintiff[3] commenced this action by serving the defendant with a three count complaint in July, 2006. The complaint contained two counts of negligence per se alleging that the defendant had violated (1) General Statutes § 21-64 et seq. (chapter 412 of the General Statutes) and (2) ordinances of the city of Shelton (ordinances), and one count alleging that the defendant had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. *After* the action was commenced, on September 11, 2006, the plaintiff filed a complaint with the office of the attorney general, regarding the manner in which the defendant operated Fairchild Heights Mobile Home Park (park).[4] The attorney general's office forwarded the complaint to the department of consumer protection (department), which is responsible for monitoring such complaints pursuant to General Statutes § 21-67. After the department had closed its file on the defendant, the plaintiff amended its complaint to include another count alleging that the manner in which the defendant sought to renew the leases of the park residents in December, 2007, violated chapter 412. The case was tried to the court in May, 2009.

is necessarily the exercise of jurisdiction. . . . As a result, [a] trial court [is] required to address [a] jurisdictional challenge before ruling on other motions and, once it [decides] that it [lacks] subject matter jurisdiction, it [is] bound and required to dismiss the [claim at issue]." (Internal quotation marks omitted.) *Sosin* v. *Scinto*, 57 Conn. App. 581, 588, 750 A.2d 478 (2000).

[3] The plaintiff is a Connecticut nonstock corporation with its principal place of business at 46 Hemlock Drive, Shelton. The plaintiff's membership consists of forty-nine owners of mobile manufactured home units in Fairchild Heights Mobile Home Park, which is owned and operated by the defendant.

[4] The park is located at 804 Bridgeport Avenue in Shelton.

Although the following facts are not relevant to our resolution of the jurisdictional issue, they provide the underlying context. In a memorandum of decision issued on September 24, 2009, the court found, in part, that an agent of the department inspected the park pursuant to the plaintiff's complaint. Thereafter, Gregory F. Carver, department investigator, sent Jeffrey W. Doolan, the defendant's majority stockholder and manager of the park, a letter advising him of several violations of General Statutes § 21-82 (a), which sets forth the landlord's responsibilities in operating a mobile home park. The department monitored the defendant's response to this letter and on July 31, 2007, Vicky E. Bullock, a department staff attorney, conducted an informal compliance hearing.[5] At the hearing, it was determined that, although the defendant had rectified some of the chapter 412 violations, concerns still existed. Further inspections of the park were conducted by Keith Lombardi, a special department investigator, who wrote in his November 28, 2007 report, "[a]ll previous concerns appeared to be addressed." In a letter dated December 28, 2007, Bullock informed the defendant that the department had determined that the defendant was in compliance with chapter 412 and that it was closing its file. At trial, the plaintiff argued that because department inspections, conducted after it had commenced the action, found violations of § 21-82 (a) in the park, it was entitled to declaratory, injunctive and CUTPA relief. The court found in favor of the defendant,[6] and the plaintiff appealed.

[5] See Regs., Conn. State Agencies § 21a-1-19a et seq. (procedural framework for review of complaints submitted to department).

[6] Essentially, the court found in the defendant's favor on the basis of Bullock's December 28, 2007 letter stating that the department was closing its file, as the defendant was in substantial compliance with chapter 412. Because we conclude that the court lacked subject matter jurisdiction, we do not reach the question of whether the court's decision was proper. But see *Sellers* v. *Sellers Garage, Inc.*, 110 Conn. App. 110, 115, 954 A.2d 235 (2008) (administrative adjudications have preclusive effect when parties have adequate opportunity to litigate).

In its brief to this court, the defendant argued that the plaintiff failed to exhaust its administrative remedies and, therefore, *this* court lacks subject matter jurisdiction. We disagree that this court lacks subject matter jurisdiction. Our limited jurisdiction is governed by General Statutes § 52-263, which provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the *final judgment* of the court or of such judge . . . ." (Emphasis added.) Whether the *trial court* had subject matter jurisdiction to decide the case, however, is a different matter entirely.

"[T]his court has jurisdiction to determine whether the trial court had subject matter jurisdiction to hear the case . . . ." *Gemmell* v. *Lee*, 42 Conn. App. 682, 684 n.3, 680 A.2d 346 (1996). Resolution of the trial court's subject matter is determinative of this appeal. Moreover, during our review of the record, we questioned whether the plaintiff had standing to bring a CUTPA claim and ordered, sua sponte, counsel to submit supplemental briefs on that issue.[7] We conclude that the plaintiff failed to exhaust its administrative remedies and therefore lacked standing to bring a CUTPA action. The trial court, therefore, was without

---

[7] We issued the following order for supplemental briefs. "Order: Counsel are hereby sua sponte ordered to file by February 10, 2011, simultaneous supplemental briefs not to exceed five pages, in which they address whether the plaintiff has standing to assert a CUTPA claim. See *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 616–17 [508 A.2d 743] (1986); *D'Angelo Development & Construction Corp.* v. *Cordovano*, 121 Conn. App. 165, 181 [995 A.2d 79, cert. denied, 297 Conn. 923, 998 A.2d 167] (2010). For purposes of this order, the operative complaint is the complaint served on July 13, 2006."

subject matter jurisdiction and the action must be dismissed.

Our Supreme Court has "long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction,* 298 Conn. 690, 696, 6 A.3d 52 (2010); see also *Albuquerque* v. *State Employees Retirement Commission,* 124 Conn. App. 866, 872, 10 A.3d 38 (2010), cert. denied, 299 Conn. 924, 11 A.3d 150 (2011). In the absence of standing, the court has no jurisdiction, as "no action in this case ever was commenced, as it was void ab initio." *America's Wholesale Lender* v. *Silberstein,* 87 Conn. App. 485, 489, 866 A.2d 695 (2005).

"[I]t is clear that, under the common law, a trial court has inherent authority to open and modify a judgment it rendered without jurisdiction. Such a judgment is void ab initio and is subject to both direct and collateral attack. . . . If a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and subject to vacation or collateral attack." (Citations omitted; internal quotation marks omitted.) *Morris* v. *Irwin,* 4 Conn. App. 431, 433, 494 A.2d 626 (1985).

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts

demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citation omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–14, 982 A.2d 1053 (2009).

I

We turn first to the question of whether the trial court lacked subject matter jurisdiction over the plaintiff's claims for declaratory and injunctive relief. We conclude that the court lacked subject matter jurisdiction over the plaintiff's claims for declaratory judgment because the plaintiff failed to exhaust its administrative remedies and failed to allege facts sufficient to demonstrate standing to bring an action for injunctive relief.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . Furthermore, [b]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiffs' claim. . . . [W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." (Citations omitted; internal quotation marks omitted.) *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 557, 630 A.2d 1304 (1993).

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in

advance of possible judicial review. . . . In addition, a favorable outcome by the administrative adjudication may render judicial intervention unnecessary." (Citations omitted; internal quotation marks omitted.) *Breiner* v. *State Dental Commission*, 57 Conn. App. 700, 704–705, 750 A.2d 1111 (2000). "Moreover, resolution of the issues at the administrative level may render judicial review unnecessary. As the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. *McKart* v. *United States*, 395 U.S. 185, 195, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, 222 Conn. 414, 420–21, 610 A.2d 637 (1992). "Whether prior recourse to the agency will be required will depend on the injury alleged and the administrative remedy available." *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 588–89, 424 A.2d 285 (1979).

In count one of its initial complaint,[8] filed July 31, 2006, the plaintiff alleged in part that the defendant was in violation of particular subdivisions of § 21-82 (a). It also alleged that due to the defendant's "actions and inactions in violating Connecticut statutes, Defendant has caused the Plaintiff's members, owners of mobile homes, to suffer ascertainable damage and harm." In count two of the complaint, the plaintiff alleged, in part, that the defendant was in violation of General Statutes § 21-68 by failing to comply with ordinances, and as a result of the defendant's actions, "the Plaintiffs have suffered ascertainable damage." The plaintiff sought

---

[8] The court tried the action on the plaintiff's amended complaint. The operative complaint for jurisdictional purposes is that included with the writ of summons. "The lack of subject matter jurisdiction to render a final judgment cannot be cured retrospectively." *Serrani* v. *Board of Ethics*, 225 Conn. 305, 309, 622 A.2d 1009 (1993).

declaratory relief pursuant to Practice Book § 17-56 (a) (2), namely, a "finding that the [defendant] has been and continues to be in violation of Connecticut General Statutes," and a "finding that the [defendant] has been and continues to be in violation of the City of Shelton Ordinances . . . and . . . § 21-68." The plaintiff also prayed for an injunction ordering the defendant "to bring the Park into compliance with all applicable statutes regulating the maintenance, repair and upkeep of mobile home parks in Connecticut . . . ."

"[O]ur analysis of the court's jurisdiction . . . requires us to examine the scope and effect of several statutory schemes. In making such determinations, we are guided by fundamental principles of statutory construction." (Internal quotation marks omitted.) *In re Jose B.*, 125 Conn. App. 572, 578, 11 A.3d 682 (2010), cert. granted on other grounds, 300 Conn. 916, 13 A.3d 1103 (2011). "[W]e construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 732, 6 A.3d 763 (2010).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of

the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

Our review of the General Statutes that pertain to the plaintiff's claims discloses a statutory scheme devised by our legislature to address complaints related to mobile manufactured home parks in conjunction with the Uniform Administrative Procedure Act (UAPA). General Statutes § 4-166 et seq. Chapter 412 is entitled "Mobile Manufactured Homes and Mobile Manufactured Home Parks. Park Owners and Residents." General Statutes § 21-75 provides: "The Commissioner of Consumer Protection shall adopt such regulations as are necessary to carry out the purposes of this chapter, in accordance with the provisions of chapter 54." General Statutes § 21-83e (a) provides in relevant part that "[a] resident who claims that an owner is violating any provision of this chapter . . . *may* request a declaratory ruling from the Department . . . ." (Emphasis added.) See also *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, supra, 178 Conn. 589 (department has authority to issue declaratory ruling on any regulation promulgated by it). General Statutes § 21-72 provides "[a]ny person aggrieved by any action of the department may appeal therefrom in accordance with the provisions of section 4-183." General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

General Statutes § 4-176 provides in relevant part: "(a) Any person *may* petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the

agency. . . . (i) . . . If an agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor . . . the agency shall be deemed to have decided not to issue such ruling." General Statutes § 4-175 (a) provides in relevant part: "[I]f an agency (1) does not take an action required . . . the petitioner may seek in the Superior Court a declaratory judgment as to the . . . final decision in question to specified circumstances. The agency shall be made a party to the action."

## A

On the basis of our review of chapter 412 and the UAPA, we conclude that the legislature made the department responsible for the development of rules and regulations pertaining to manufactured mobile home parks. To that end, the department is charged with licensing and monitoring complaints with regard to mobile home parks. A resident of a mobile home park who has a complaint may petition the department for a declaratory ruling. If the department fails to issue a declaratory ruling or issues a ruling that a petitioner claims impairs or threatens to impair its rights, a petitioner may bring an appeal in the Superior Court. The plaintiff did not allege that it sought a declaratory ruling from the department regarding its complaints about the park. It brought an action in the Superior Court, thereby bypassing the statutory scheme for administrative review and thus failing to exhaust its administrative remedies with regard to the declaratory relief it sought.

On appeal, the plaintiff has argued that the language of § 21-83e (a), i.e., "may request," gives it the option to request a declaratory ruling from the department or to bring an action in the Superior Court. The plaintiff's contention is based on the linguistic distinction between the words shall and may. It argues that the legislature did not use the word shall requiring it to

seek a declaratory ruling and therefore it properly commenced an action in the trial court. The plaintiff misconstrues the statute. Section 21-83e (a) gives a resident of a mobile home park the right to seek a declaratory ruling from the department; it does not compel a person to do so. The flaw in the plaintiff's argument can be seen if the word shall is substituted for the word may in § 21-83e (a), i.e., "[a] resident who claims that an owner is violating any provision of this chapter . . . [shall] request a declaratory ruling from the Department . . . ." The language of the statute indicates that the legislature intended to provide a means by which a resident with a complaint about a mobile home park could have the issue resolved. It did not intend that all complaints had to be addressed by means of a statutory remedy. Such an outcome would be absurd given the resources it would require and defy common sense when the parties could address any complaints informally between themselves. The filing of a request for a declaratory ruling is discretionary on the part of the resident with a complaint. Compare *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004) ("[i]t is especially relevant that the legislature chose to use the word 'shall' when referring to the service of an apportionment complaint in contrast to the more permissive, 'may,' which is used with respect to the right to bring an apportionment claim"); see also *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 558; *Housing Authority* v. *Papandrea*, supra, 222 Conn. 420–23.

The defendant has directed us to *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, supra, 178 Conn. 586, as the controlling case. The plaintiff, however, argues that the case is no longer controlling because it predated the enactment of § 21-83e (a). This argument, too, is without merit. In *Connecticut Mobile Home Assn., Inc.*, an association of mobile home owners

sought a declaratory judgment determining whether the provisions of the park owner's proposed lease were valid and an injunction restraining the park owner from evicting residents who did not sign the lease. Id., 587–88. The park owner filed a demurrer to the complaint, which was sustained by the trial court. Id., 588. The association filed an appeal to our Supreme Court. Our Supreme Court determined that the real estate commission (commission),[9] under § 4-176, had authority to issue declaratory rulings "on the applicability of any statute or any regulation promulgated by it." Id., 589. If the lease at issue was in violation of statutes and regulations, "the commission has the power to so conclude in a declaratory ruling." Id.

The court concluded that the association had bypassed its administrative remedy by commencing an action in the trial court,[10] which "contravened the clear mandate of General Statutes [Rev. to 1973] § 4-175, which states that [a] declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation . . . and the agency has either so acted or has declined to exercise its discretion thereunder." (Internal quotation marks omitted.) Id. Although § 4-175 has since been amended, the statute still requires a party

---

[9] At the time, the regulation of mobile home parks was under the jurisdiction of the real estate commission.

[10] Our Supreme Court has observed that "it is of more than casual significance that, subsequent to the trial court's ruling sustaining the [park owner's] demurrer in the present case, the individual plaintiffs *did* pursue the administrative process by requesting a ruling from the real estate commission as to the validity of the rental agreement presently at issue. The commission . . . rendered a decision upholding the validity of the rental agreement, from which the plaintiffs have appealed. . . . Therefore, the central issue presented in this case has, after a proper initial resort to the administrative process, been preserved for judicial review." (Citation omitted; emphasis in original.) *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, supra, 178 Conn. 590–91.

seeking to challenge the application of a statute, regulation or final decision to specified circumstances to file a petition for a declaratory ruling with the responsible agency, prior to seeking a declaratory judgment in the Superior Court. See General Statutes § 4-175; see also General Statutes § 4-176 (concerning declaratory rulings, petitions and regulations).

B

The plaintiff also prayed for an injunction. We acknowledge that the department lacks authority to grant injunctive relief, but we conclude on the basis of the allegations of the initial complaint, that the action was not properly before the trial court, as the plaintiff failed to allege facts sufficient to grant it standing.

Again, we turn to *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, supra, 178 Conn. 586, for guidance. In that case, the association sought an injunction to prevent the owner of the park from evicting tenants who failed to sign the subject lease. Id., 593. Our Supreme Court determined that the trial court properly sustained the demurrer to the request for injunctive relief, but on grounds other than the failure to exhaust administrative remedies. Id., 592. "Injunctive relief is appropriate only where two conditions are met: the plaintiff must allege and prove that absent such relief he will suffer irreparable injury; and he must allege and demonstrate that he has no adequate remedy at law." Id.

Our review of the initial complaint served on the defendant in this action reveals that it lacks the allegations necessary to seek injunctive relief. In the final paragraph of count one, the plaintiff alleged that "[a]s a result of Defendant's actions and inactions in violating Connecticut statutes, Defendant has caused the Plaintiff's members, owners of mobile homes, to suffer ascertainable damage and harm." In the last paragraph of count two, the plaintiff alleged that "[a]s a result of

Defendant's actions, the Plaintiffs have suffered ascertainable damage." The plaintiff failed to allege that absent an injunction, it will suffer irreparable harm and lacks an adequate remedy at law. Irreparable harm is not alleged, and the plaintiff clearly has a statutory remedy to seek redress from the department.

The plaintiff prayed for an injunction ordering the defendant "to bring the Park into compliance with all applicable statutes regulating the maintenance, repair and upkeep of mobile home parks in Connecticut . . . ." In the first instance, the legislature has conferred on the department the monitoring of compliance with statutes regulating mobile home parks. See General Statutes § 21-75; see also Regs., Conn. State Agencies § 21a-1-19a et seq.[11] Within chapter 412, the department has the authority, among other things, to license mobile home park operators and to inspect mobile home parks for compliance with its regulations; General Statutes § 21-67; revoke, suspend or refuse to renew a license for violations of chapter 412 and to fine owners; General Statutes § 21-71; or otherwise penalize a mobile park operator for violations of the provisions for rental agreements; General Statutes § 21-83b; review and approve rental agreements; General Statutes § 21-70; and prohibit noncompliant mobile park operators from collecting rent. General Statutes § 21-83c.

The Superior Court does not have jurisdiction to adjudicate a claim for injunctive relief unless the department fails to issue a declaratory ruling or the declaratory ruling it issues "interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff . . . ." General Statutes § 4-175 (a). In this action, the plaintiff has not alleged that it sought

---

[11] The regulations provide a procedural framework for review of complaints submitted to the department. The procedures provide a graduated means to deal with complaints ranging from informal inspection and voluntary compliance to formal hearings and declaratory rulings.

a declaratory ruling pursuant to § 4-176, and it has failed to allege or demonstrate, pursuant to § 4-175, that it is threatened with irreparable harm by the department's monitoring of the manner in which the defendant operates the park. A plaintiff lacks standing to seek an injunction if it does not allege and demonstrate that it would suffer irreparable injury. *Austin* v. *Housing Authority*, 143 Conn. 338, 349, 122 A.2d 399 (1956). The plaintiff's claim for injunctive relief, therefore, should be dismissed.

## II

In count three of the initial complaint, the plaintiff alleged that the defendant had violated chapter 412 and thus had violated CUTPA. See General Statutes § 21-83e (b) ("[a] violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under chapter 735a").[12] We conclude that the plaintiff lacked standing to assert a CUTPA claim.

"It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightly invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary." (Citations omitted; internal quotation marks

---

[12] Chapter 735a of the General Statutes is entitled "Unfair Trade Practices." General Statutes § 42-110a et seq.

omitted.) *Megin* v. *New Milford,* 125 Conn. App. 35, 37, 6 A.3d 1176 (2010).

The plaintiff alleged that it is an association of residents of the park. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (Internal quotation marks omitted.) *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 616, 508 A.2d 743 (1986). In its supplemental brief, the defendant concedes that the plaintiff satisfies the first two prongs of the test, but asserts that it does not meet the third prong. We agree with the defendant.

"[T]o prevail on a CUTPA claim, the plaintiff must prove, pursuant to General Statutes § 42-110b (a), that the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce and that as a result of the use of the act or practice prohibited by § 42-110b (a), the plaintiff suffered an ascertainable loss of money or property. . . . The language as a result of requires a showing that the prohibited act was the proximate cause of the harm to the [complaining party]. . . . Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known." (Citations omitted; internal quotation marks omitted.) *D'Angelo Development & Construction Corp.* v. *Cordovano,* 121 Conn. App. 165, 181, 995 A.2d 79, cert. denied, 297 Conn. 923, 998 A.2d 167 (2010).

In count three of its initial complaint, the plaintiff alleged that it suffered an ascertainable loss as a result

of the defendant's conduct that constitutes per se unfair and deceptive trade practices in violation of CUTPA. The plaintiff alleged that the defendant violated portions of chapter 412, and thus CUTPA, due to the following alleged acts or omissions: failure (1) to maintain roads in the park in good condition, (2) to remove or repair abandoned mobile homes in the park that it owns, (3) to keep the park free from stagnant water and repeated flooding, (4) to keep common areas free from refuse and debris, (5) to remediate fuel oil contamination, (5) maintain and repair retaining walls in the park, (6) to maintain the electrical system in the park, (7) to maintain the plumbing system in the park resulting in the continual deposit of sand, grit and rust into the faucets, sinks and tubs of the mobile homes in the park, (8) to maintain the septic system in the park that frequently results in the backup of waste into mobile homes in the park and (9) to grade lots level. In order to prove the alleged violations of chapter 412 and the resulting damage, residents of the park would have to testify as to their firsthand knowledge of such violations and how they were damaged. The plaintiff, therefore, cannot satisfy the third prong of the standing test; *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* supra, 199 Conn. 616; because the claims of damage it alleged require the participation of its individual members. The association thus lacked standing to bring the CUTPA action.

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to dismiss the action.

In this opinion the other judges concurred.