******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FAIRCHILD HEIGHTS RESIDENTS ASSOCIATION,
INC. *v.* FAIRCHILD HEIGHTS, INC.
(SC 18917)

Rogers, C. J., and Palmer, Zarella, McDonald and Vertefeuille, Js.

*Argued September 18, 2013—officially released January 21, 2014*

*Douglas J. Varga*, with whom, on the brief, were *Maximino Medina, Jr.*, and *Dominic Spinelli*, for the appellant (plaintiff).

*Thomas T. Lonardo*, with whom were *Colin P. Mahon* and *Ryan A. Bauder*, for the appellee (defendant).

*George Jepsen*, attorney general, *Gregory T. D'Auria*, solicitor general, and *Phillip Rosario* and *Brendan T. Flynn*, assistant attorneys general, filed a brief for the state of Connecticut et al. as amici curiae.

*Opinion*

ZARELLA, J. The plaintiff, Fairchild Heights Residents Association, Inc. (association), appeals from the judgment of the Appellate Court, which reversed the judgment of the trial court and directed that court to dismiss the association's claims alleging negligence and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., against the defendant, Fairchild Heights, Inc., for lack of subject matter jurisdiction. The association argues that the Appellate Court incorrectly concluded that it failed to exhaust its administrative remedies before requesting declaratory relief and that it did not have standing to bring an action under CUTPA. We reverse in part the judgment of the Appellate Court and remand the case for a new trial on the association's CUTPA claim.

The following relevant facts and procedural history are set forth in the trial court's memorandum of decision. The association is a nonstock corporation that represents approximately forty-five mobile home owners who reside at the Fairchild Heights Mobile Home Park (park) in the town of Shelton. Nancy Dickal, a park resident for more than thirty years, has been the association's president since its creation in February, 2005. The defendant is a Connecticut corporation that owns and operates the park. The defendant's majority shareholder and the park's on-site manager is Jeffrey Doolan.

The association was established in part to address maintenance issues. Shortly after its creation, the association distributed a membership application to residents that included questions asking them to identify specific concerns regarding the park's operation and condition. On March 28, 2005, the association's attorney sent a letter to the defendant's attorney discussing these concerns and requesting a meeting to address them. Thereafter, the attorneys conducted a walk-through of the park on June 15, 2005, following which the association's attorney sent a letter to the defendant's attorney listing a series of maintenance violations and giving the defendant three weeks to make the necessary repairs or commit to make the repairs in a timely manner.

After the defendant rejected the deadline and the parties' negotiations broke down, the association filed an action against the defendant in July, 2006, seeking redress for the defendant's failure to respond to the association's concerns.[1] The first two counts of the complaint alleged per se negligence for violations of state statutes and municipal ordinances, respectively, relating to maintenance standards applicable to mobile home park owners under chapter 412 of the General Statutes, entitled "Mobile Manufactured Homes and Mobile Manufactured Home Parks. Park Owners and Residents," General Statutes § 21-64 et seq. The third

count alleged a violation of CUTPA. The complaint sought declaratory relief pursuant to Practice Book § 17-56 (a) (2), and injunctive relief, punitive damages and attorney's fees pursuant to CUTPA. It also sought costs and other equitable relief to which the association might be entitled.

In September, 2006, the association filed a complaint with the Office of the Attorney General.[2] The attorney general forwarded the complaint to the Department of Consumer Protection (department), which assigned the matter to a department investigator.[3] Following several inspections, the investigator sent a letter dated October 13, 2006, to Doolan advising him of "serious violations" of General Statutes § 21-82 (a).[4] The letter listed the violations and requested that Doolan advise the department by October 30, 2006, as to when the violations would be corrected, adding that a failure to cooperate would lead to additional enforcement action. Apparently in response to this letter, Doolan initiated certain actions intended to correct the violations.

Thereafter, the department investigator conducted further inspections of the park. In July, 2007, he issued two written reports noting certain improvements but stating that a number of violations had not yet been corrected. On July 31, 2007, the department conducted an informal compliance hearing, which was attended by the parties' counsel. At the hearing, it was noted that the defendant had made progress in addressing the violations but that concerns remained. In response, Doolan agreed to perform additional work to eliminate these concerns and to bring the park in compliance with the applicable statutory standards.

On October 24, 2007, the department investigator conducted another inspection and noted in a subsequent report that various improvements had been made. He also noted certain outstanding work that remained to be done. In a report dated November 28, 2007, however, the investigator referred to the October 24 inspection and stated that "[a]ll previous concerns appeared to be addressed." A letter from the department to the defendant's attorney dated December 28, 2007, similarly stated that the department had "determined" that the park was "in compliance" with state law, "no further action [was] warranted," and the file regarding the park had been "closed."

On August 20, 2008, the association amended the complaint previously filed with the trial court in July, 2006, adding more detail to the existing three counts and one count of per se negligence for the defendant's alleged violations of statutory provisions relating to renewal of the residents' mobile home leases in December, 2007. The association also requested declaratory relief under Practice Book §§ 17-55 and 17-56, and injunctive relief to compel the defendant's compliance with the applicable statutory provisions, to correct any

current areas of noncompliance, and to preclude the defendant from attempting to recover from the association's members or other park residents any costs or expenses arising out of or relating to the litigation. The association further clarified that it was requesting injunctive relief pursuant to CUTPA, among other statutory provisions.[5]

The case was tried to the court in May, 2009, after which the parties filed posttrial briefs. In a memorandum of decision dated September 24, 2009, the trial court found in favor of the defendant on all counts. The court explained that, " '[a]s a general matter, administrative decisions are entitled to preclusive effect' " and that, with regard to counts one and three, the association had failed to provide the court with case law to support a modification of the department's findings for the defendant in the absence of an administrative appeal. The trial court further stated, with regard to count two, that the association had not met its burden of proof because no municipal employee had testified that the park was in violation of the municipal ordinances. The trial court finally found in favor of the defendant on the CUTPA count, declining to modify the department's finding that the defendant was in compliance with the statutes cited in the association's complaint.

The association appealed to the Appellate Court, which ordered supplemental briefs on the issue of whether the association had standing to bring a CUTPA claim. *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 131 Conn. App. 567, 571 n.7, 27 A.3d 467 (2011). The Appellate Court subsequently concluded that "the [association] failed to exhaust its administrative remedies and that the trial court otherwise lacked jurisdiction and should have dismissed the case." Id., 568–69.

The Appellate Court first determined that the operative complaint for purposes of addressing subject matter jurisdiction was the association's original complaint, and not the amended complaint on which the action had been tried. See id., 574 n.8. The Appellate Court thus did not address the alleged violation of statutory lease provisions, a claim that had not been included in the original complaint. The court then concluded, with respect to the first two counts of the original complaint alleging violations of maintenance standards and municipal ordinances under chapter 412, that the association's request for declaratory relief should be dismissed because the association had not sought a declaratory ruling from the department and thus had failed to exhaust its administrative remedies. See id., 577–80. The Appellate Court also concluded that the association did not have standing to seek injunctive relief because the original complaint did not allege that, in the absence of an injunction, the association would

suffer irreparable harm.[6] See id., 580–82. The court finally concluded that the association lacked standing to bring a CUTPA claim because the association's allegations of damages required the participation of the individual association members in order to satisfy the CUTPA requirement of demonstrating ascertainable loss. Id., 582–84. Accordingly, the Appellate Court reversed the trial court's judgment and remanded the case to that court with direction to dismiss the association's action. Id., 584.

The association filed a petition for certification to appeal to this court, and we granted certification limited to the following issue: "Did the Appellate Court properly reverse and remand with direction to dismiss the action based on a determination that the plaintiff failed to exhaust its administrative remedies and lacked associational standing?" *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 303 Conn. 928, 36 A.3d 242 (2012).

I

APPLICABILITY OF THE EXHAUSTION DOCTRINE

A

We first consider whether the Appellate Court properly applied the exhaustion doctrine to the association's request for declaratory relief in connection with its claims of per se negligence for violations of chapter 412 of the General Statutes. The association claims that the Appellate Court incorrectly concluded that it failed to exhaust its administrative remedies because the exhaustion doctrine is inapplicable in light of the procedures that the department followed in responding to the association's complaint. The association contends that, because the department chose to address the complaint solely through informal compliance efforts, it foreclosed the association's ability to challenge the department's decision through a formal administrative proceeding or administrative appeal. The association also claims that the statutory scheme does not compel administrative exhaustion because use of the word "may" in General Statutes § 21-83e (a), which provides that a mobile home park resident who alleges a violation of the statutory scheme "may" request a declaratory ruling from the department prior to seeking judicial relief, means that the request for a declaratory ruling is discretionary. The association finally claims that requiring the filing of an administrative complaint prior to seeking judicial relief would have harmful public policy consequences because it would result in an increase in department costs and an explosion of formal proceedings.

The defendant responds that the Appellate Court's conclusion "comports with the numerous public policies underlying the exhaustion doctrine," including use of the department's expertise, where possible, in evalu-

ating alleged statutory violations, the efficiency and economy achieved by relying on the department's factual findings, the likelihood of a resolution during an administrative proceeding, and the disincentive it provides to forum shop. The defendant also argues that the Appellate Court's conclusion is consistent with this court's reasoning in *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 424 A.2d 285 (1979), in which we determined that the trial court had no subject matter jurisdiction over an association's claim for declaratory relief because the association had failed to exhaust its administrative remedies. See id., 589–91. The defendant finally contends that the use of the word "may" in § 21-83e suggests that the request for a declaratory ruling is discretionary only in the sense that a mobile home resident is not obligated to seek declaratory relief rather than other statutory remedies, but merely has the option of doing so in order to pursue a subsequent judicial remedy. We agree with the defendant.

"As a preliminary matter, we set forth the applicable standard of review. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [Additionally] [b]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Nyenhuis* v. *Metropolitan District Commission*, 300 Conn. 708, 715, 22 A.3d 1181 (2011).

"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . Thus, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Citation omitted; internal quotation marks omitted.) *Piquet* v. *Chester*, 306 Conn. 173, 179–80, 49 A.3d 977 (2012).

There are two ways to determine whether an administrative remedy has been exhausted. "[When] a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. . . . When, however, a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief."

(Citation omitted; internal quotation marks omitted.) *Piteau* v. *Board of Education*, 300 Conn. 667, 678–79, 15 A.3d 1067 (2011).

We begin our inquiry by examining the statutory language and the remedies provided in chapter 412 of the General Statutes to determine whether the association was required to request a declaratory ruling from the department prior to seeking judicial relief. In this endeavor, we are guided by the well established principle that "[i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Ugrin* v. *Cheshire*, 307 Conn. 364, 379–80, 54 A.3d 532 (2012).

In the present case, the relevant statutory provisions on mobile home parks are contained in chapter 412 of the General Statutes, which operates in conjunction with the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Beginning with the provisions in chapter 412, General Statutes § 21-75 provides that "[t]he Commissioner of Consumer Protection shall adopt such regulations as are necessary to carry out the purposes of . . . chapter [412], in accordance with the provisions of [the UAPA]." In addition, § 21-83e (a) provides that "[a] [mobile home] resident who claims that an owner is violating any provision of . . . chapter [412] . . . may request a declaratory ruling from the [d]epartment . . . ." General Statutes § 21-72 further provides that "[a]ny person aggrieved by any action of the department may appeal therefrom in accordance with the provisions of section 4-183."

Turning to the UAPA, General Statutes § 4-176 (a) provides that "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." Section 4-176 (i) also provides that, "[i]f an

agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor . . . the agency shall be deemed to have decided not to issue such ruling." General Statutes § 4-175 (a) further provides that, "if an agency (1) does not take an action required by . . . section 4-176 . . . (2) decides not to issue a declaratory ruling under . . . section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under . . . section 4-176, the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. . . ." General Statutes § 4-183 (a) repeats this rule in more general terms, providing that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

We have recognized on multiple occasions that an aggrieved party must exhaust its administrative remedies *before* it may seek judicial relief. See, e.g., *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 480, 55 A.3d 251 (2012) ("prior to bringing an action in the trial court, the plaintiff . . . was required to exhaust its administrative remedies by requesting a declaratory ruling from the defendant"); *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 557, 630 A.2d 1304 (1993) ("[i]t is a well settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter" [internal quotation marks omitted]); *LaCroix* v. *Board of Education*, 199 Conn. 70, 83–84, 505 A.2d 1233 (1986) (same); see also *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, supra, 178 Conn. 589–91 (association of mobile home park residents improperly bypassed administrative remedy by failing to seek declaratory ruling from agency prior to commencing action in trial court). In the present case, the association did not comply with this requirement.

The association filed a complaint with the trial court in July, 2006. Two months later, in September, 2006, it filed a complaint with the Office of the Attorney General, which forwarded the complaint to the department. The department conducted an informal investigation and closed its file on the complaint in December, 2007. Accordingly, the association failed to exhaust its administrative remedies with respect to counts one and two because it filed the complaint with the Office of the Attorney General two months *after* it sought judicial relief and the department did not complete its investigation until fifteen months after the filing.

Even if the association had filed the complaint after the investigation was completed, however, it still would

have failed to exhaust its administrative remedies because it did not seek a declaratory ruling pursuant to § 21-83e (a), from which it could have appealed to the trial court under §§ 4-183 and 21-72. The association merely sent a letter to the Office of the Attorney General in which it listed the alleged maintenance violations, made other claims regarding retaliatory actions by the defendant against individual members of the association's board of directors, and sought an "immediate investigation."

Furthermore, we disagree with the association's claim that the language used in § 21-83e (a) does not require that a complainant request a declaratory ruling prior to seeking judicial relief. Although § 21-83e (a) provides that "[a] [mobile home] resident who claims that an owner is violating any provision of . . . chapter [412] . . . *may* request a declaratory ruling from the [d]epartment"; (emphasis added); the legislature's use of the more permissive word, "may," rather than the generally mandatory word, "shall," does not mean that the request for a declaratory ruling is discretionary insofar as it may serve as a prerequisite to seeking declaratory relief from the court. The statutory scheme provides dissatisfied residents with numerous other administrative remedies for addressing substandard conditions at a mobile home park, either by way of a department investigation or by direct individual action. These remedies include suspension or revocation of the owner's license to operate the park; see General Statutes § 21-71 (a); the imposition of fines; see General Statutes § 21-71 (a); prohibitions on the collection of rent after suspension or revocation; see General Statutes § 21-73 (a); termination of the rental agreement following proper notice for breach of the landlord's responsibilities; see General Statutes § 47a-12 (a); and placement of the required rent in a special account administered by the court until the statutory violations are addressed. See General Statutes § 47a-14h. When viewed in this context, the language in § 21-83e (a) providing that a resident "may request a declaratory ruling from the [d]epartment" simply means that a resident has the discretion to request a declaratory ruling or to seek any of the other remedies available to achieve statutory compliance. It does not mean, even implicitly, that a resident has the discretion to request a declaratory ruling prior to seeking a declaratory judgment from the court.

If this was the meaning of the statute, a declaratory ruling would be required only if the word "shall" had been used in place of the word "may." As the Appellate Court noted, however, this would lead to an absurd result because it would mean that, in addition to another type of statutory remedy or informal compliance procedure, like the one employed in the present case, all complainants would be required to request a declaratory ruling, despite their preference for another remedy,

in seeking relief for a statutory violation by an owner. See *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, supra, 131 Conn. App. 578. We therefore conclude that, even if the association had filed its complaint with the trial court after the department closed its file on the matter, the association would have failed to exhaust its administrative remedies because an administrative remedy was available in the form of a declaratory ruling under § 21-83e (a), which the association did not request.

Finally, the fact that the department chose to follow an informal compliance procedure is no excuse for the association's omissions. The department did exactly what the association asked it to do, which was to investigate the association's complaint. The association had the responsibility in the first instance to request a declaratory ruling, from which it could have appealed to the court pursuant to §§ 4-183 and 21-72 if it was not satisfied with the outcome. This it did not do. As a consequence, the fact that there was no declaratory ruling by the department from which the association could appeal was not the department's fault. It was the association's obligation to pursue this option at the outset, and its failure to do so means that it did not exhaust its administrative remedies with respect to counts one and two.

B

We next consider whether the Appellate Court properly applied the exhaustion doctrine to the association's claim for declaratory relief based on the alleged CUTPA violation. The association claims that the Appellate Court incorrectly concluded that the association was required to seek a declaratory ruling from the department prior to seeking a judicial remedy under CUTPA. The defendant responds that the Appellate Court did not conclude that the association should have exhausted its administrative remedies with respect to the CUTPA claim, and, therefore, this court need not address that issue. We agree with the defendant that the Appellate Court's holding as to the CUTPA claim was not based on the association's failure to exhaust its administrative remedies.

After the parties filed their briefs, the Appellate Court issued the following order: "Counsel are hereby sua sponte ordered to file . . . simultaneous supplemental briefs . . . in which they address whether the [association] has standing to assert a CUTPA claim. See *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 616–17 [508 A.2d 743] (1986); *D'Angelo Development & Construction Corp.* v. *Cordovano*, 121 Conn. App. 165, 181 [995 A.2d 79, cert. denied, 297 Conn. 923, 998 A.2d 167] (2010)." (Internal quotation marks omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, supra, 131 Conn. App. 571 n.7. The two citations in the order refer, respectively, to

the "three part test that must be satisfied before an association will be granted standing to assert the rights of its members, without also asserting injury to itself"; *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 616; and the proof required to establish under CUTPA that a plaintiff has suffered "an ascertainable loss of money or property" as a result of "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." (Internal quotation marks omitted.) *D'Angelo Development & Construction Corp.* v. *Cordovano*, supra, 181. In light of these citations, the association argued in its supplemental brief that it had associational standing to pursue a CUTPA claim on behalf of its members and that it had established the requisite ascertainable loss. Correspondingly, the defendant argued in its supplemental brief that the association did not have standing in its representational capacity to bring a CUTPA claim, and, because of the lack of standing, it would be unable to prove ascertainable loss. Neither party discussed, or even mentioned in passing, the exhaustion doctrine.

Thereafter, the Appellate Court stated in the introductory portion of its decision: "[D]uring our review of the record, we questioned whether the [association] had standing to bring a CUTPA claim and ordered, sua sponte, counsel to submit supplemental briefs on that issue. We conclude that the [association] failed to exhaust its administrative remedies and therefore lacked standing to bring a CUTPA action. The trial court, therefore, was without subject matter jurisdiction and the action must be dismissed." (Footnote omitted.) *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, supra, 131 Conn. App. 571–72. In part II of its opinion, however, in which the court conducted an in-depth analysis of the issues of associational standing and ascertainable loss in relation to the association's CUTPA claim; see id., 582–84; it made no reference to the exhaustion doctrine. Rather, it rejected the association's CUTPA claim on the ground that the association had failed to satisfy the third prong of the associational standing test set forth in *Connecticut Assn. of Health Care Facilities, Inc.* See id., 584.

On the basis of these facts, we conclude that the Appellate Court did not reject the association's CUTPA claim on the ground that the association had failed to exhaust its administrative remedies. The Appellate Court's single, isolated reference to the exhaustion doctrine in connection with the CUTPA claim, without any further explanation, must be attributed to an oversight. We nonetheless consider whether the exhaustion doctrine applies because a reviewing court may consider the issue of subject matter jurisdiction at any time; see, e.g., *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 506, 43 A.3d 69 (2012); and the association and amici curiae have addressed the issue of exhaustion on appeal to this court.

The association claims that it was not required to exhaust its administrative remedies before bringing a CUTPA claim because (1) the department did not have the ability to award the injunctive relief, punitive damages and attorney's fees that the association sought under CUTPA, (2) the legislative history of CUTPA evinces a clear legislative intent not to require private litigants to exhaust any remedies available through the department before pursuing a CUTPA action in the Superior Court, and (3) public policy warrants allowing parties to bypass administrative remedies and to bring CUTPA actions directly in the Superior Court because it will decrease the burden on the department, provide consumers with a judicial remedy and affirm the attorney general's power to enforce the ban on unfair trade practices. In their amicus brief, the state and the department argue that CUTPA provides consumers with a comprehensive, multi-faceted enforcement framework that includes administrative proceedings but that allows private parties to assist in the enforcement of CUTPA through private actions brought in the Superior Court. As previously noted, the defendant claims that there is no need for this court to address the issue because the Appellate Court never held that exhaustion is required prior to the commencement of a CUTPA action. Accordingly, the defendant has not expressed an opinion one way or another. We agree with the association and the amici curiae that CUTPA does not require litigants to exhaust their administrative remedies before bringing a CUTPA claim.

The language of CUTPA and our prior case law strongly suggest that the exhaustion doctrine does not apply. CUTPA provides for two general enforcement mechanisms. These include (1) administrative proceedings initiated by the commissioner of consumer protection (commissioner) and carried out by the commissioner's authorized representatives, including the attorney general, pursuant to General Statutes §§ 42-110d and 42-110m, and (2) actions initiated by private parties in the Superior Court for punitive damages, costs, attorney's fees, injunctive and other equitable relief pursuant to General Statutes § 42-110g. Section 42-110g contains no requirement that a private party exhaust administrative remedies prior to seeking judicial relief.

In interpreting the foregoing provisions, we have stated that CUTPA is "remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 379, 880 A.2d 138 (2005); see also General Statutes § 42-110b (d) ("[i]t is the intention of the legislature that [CUTPA] be remedial and be so construed"). There is no express or implicit exhaustion requirement in the statutory provision, and we decline to impose one. Consequently, it

was not improper for the association to go directly to the trial court and seek judicial relief under CUTPA.

We also note that exhaustion is not required when an administrative remedy is futile or inadequate. See *Connecticut Mobile Home Assn.*, *Inc.* v. *Jensen's*, *Inc.*, supra, 178 Conn. 592 ("[when] an administrative remedy does not exist . . . or is inadequate . . . a party will be allowed to resort to the courts in the first instance" [citations omitted]). "[A]n administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 259, 851 A.2d 1165 (2004). In contrast, "[a]n adequate remedy at law is one which is specific and adapted to securing the relief sought conveniently, effectively and completely." (Internal quotation marks omitted.) *Bianco* v. *Darien*, 157 Conn. 548, 554–55, 254 A.2d 898 (1969).

In the present case, the remedies available to the association included a request for declaratory relief; see General Statutes § 21-83e (a); the imposition of fines on the owner of the mobile home park; see General Statutes § 21-71 (a); suspension or revocation of the owner's license to operate the park; see General Statutes § 21-71 (a); prohibitions on the collection of rent after suspension or revocation; see General Statutes § 21-73 (a); termination of the rental agreement following proper notice for breach of the landlord's responsibilities; see General Statutes § 47a-12 (a); and placement of the required rent in a special account administered by the court until the statutory violations are addressed. See General Statutes § 47a-14h. The department has no authority to award the injunctive relief, punitive damages, attorney's fees and costs sought by the association and available under CUTPA. Accordingly, any administrative request for such remedies would have been futile and inadequate.

The present case is similar to *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 519, 442 A.2d 920 (1982), in which the plaintiff sought monetary and punitive damages, attorney's fees, and costs for violations of the Connecticut Unfair Insurance Practices Act, which is currently codified at General Statutes § 38a-815 et seq. In that case, we concluded that "[t]he pertinent statutes do not authorize the [insurance] commissioner to award damages to an aggrieved person nor does he have the authority to determine a private right to damages.

"It appears, therefore, that the plaintiffs had no practical or adequate administrative remedy which would require exhaustion. . . . The plaintiffs are entitled to maintain a private right of action for monetary damages for alleged unfair trade practices, as defined by [what is now General Statutes § 38a-816], without first exhausting the administrative remedies under [what is

now General Statutes § 38a-817] and it was error for the court to hold otherwise." (Citations omitted.) Id., 520–21. In the present case, as in *Griswold*, the relevant state agency was unable to award the punitive damages, attorney's fees, costs, injunctive and other equitable relief sought by the association. Accordingly, there was no administrative remedy that the association could have exhausted to obtain such relief before bringing its CUTPA claim.

## II

### ASSOCIATIONAL STANDING UNDER CUTPA

The association next claims that the Appellate Court incorrectly concluded that it lacked associational standing to bring a CUTPA claim on the ground that the third prong of the associational standing test required residents of the park to testify regarding their firsthand knowledge of the alleged statutory violations and how they were individually harmed. The association specifically claims that the Appellate Court misapplied the applicable law because, under United States Supreme Court and other federal precedent, the participation of each individual member of the association was not indispensable to a determination of whether the defendant had committed the violations and whether the association was entitled to injunctive relief, punitive damages and attorney's fees. The association also claims that individual participation was not required to establish the CUTPA element of ascertainable loss because it was not necessary for the association to prove quantifiable damages in order to satisfy that element.

The defendant responds that the Appellate Court correctly concluded that the association failed to satisfy the third prong of the associational standing test because extensive member participation was required to prove ascertainable loss and to recover punitive damages and injunctive relief under CUTPA. We agree with the association.

"[S]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Nevertheless, [s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citation omitted; internal quotation marks omitted.) *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 161, 75 A.3d 651 (2013). "If

a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 155, 953 A.2d 1 (2008).

In *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 610, 615–16, we considered whether two associations lacked standing to bring an action on behalf of their members and adopted the test articulated by the United States Supreme Court in *Hunt* v. *Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977), which that court had derived in turn from its decision in *Warth* v. *Seldin*, 422 U.S. 490, 511, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Quoting from *Hunt*, we stated: "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. . . . Representational standing depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." (Citations omitted; internal quotation marks omitted.) *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 616. In *Warth*, the United States Supreme Court also had explained, with respect to the third prong, that, "so long as the nature of the claim and of the relief sought does not make the individual participation of *each* injured party *indispensable* to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." (Emphasis added.) *Warth* v. *Seldin*, supra, 511.

The defendant concedes that the first two prongs of the foregoing test were satisfied and that the only disputed issue is whether the third prong was satisfied. Thus, in order to determine whether the claim asserted and the relief requested required the participation of the association's individual members, we must consider the principles that govern a CUTPA claim.

"[T]o prevail on a CUTPA claim, [a plaintiff] must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce; General Statutes § 42-110b (a); and (2) each

class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices. General Statutes § 42-110g (a)." (Footnote omitted; internal quotation marks omitted.) *Neighborhood Builders, Inc.* v. *Madison*, 294 Conn. 651, 657, 986 A.2d 278 (2010). "An 'ascertainable loss' is a loss that is 'capable of being discovered, observed or established.' . . . 'The term "loss" necessarily encompasses a broader meaning than the term "damage," ' and 'has been held [to be] synonymous with deprivation, detriment and injury.' . . . To establish an ascertainable loss, a plaintiff is 'not required to prove actual damages of a specific dollar amount.' . . . '[A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known.' " (Citations omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 218, 947 A.2d 320 (2008).

Although the association alleged per se CUTPA violations of several provisions of chapter 412 of the General Statutes; e.g., General Statutes § 21-83e (b) ("[a] violation of any of the provisions of . . . chapter [412] shall be deemed an unfair or deceptive trade practice under [CUTPA]"); it still was required to prove that it had suffered an ascertainable loss because of the violations. See, e.g., *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343–44, 576 A.2d 464 (1990). Accordingly, the question of standing in the present case may be more accurately stated as whether the association was able to properly represent its individual members in light of the relief requested and the proof required to establish the alleged statutory violations and ascertainable loss under CUTPA.

As previously noted, "[r]epresentational standing depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." (Internal quotation marks omitted.) *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 616. We thus concluded in *Connecticut Assn. of Health Care Facilities, Inc.*, that the third prong of the test was satisfied because "[t]he relief sought by the declaratory judgment actions [would] 'inure to the benefit' of all members of both associations . . . [and] [b]ecause money damages [were] not sought for alleged injuries to the individual members, proof relating solely to the variant experiences of each [member] . . . [would] not be necessary." (Citation omitted.) Id., 617. We similarly concluded in two subsequent cases that the third prong was satisfied when the plaintiff associations were seeking declaratory relief rather than money damages. See *Connecticut Assn. of Not-For-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 387,

709 A.2d 1116 (1998) ("because this action seeks only a general declaration concerning the legality of the [state agency's] practice, it is unnecessary for any individual member to be a party"); *Connecticut State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 305, 524 A.2d 636 (1987) ("[b]ecause money damages are not sought for alleged injuries to the individual members, proof relating solely to the variant experiences of each [member] resulting from the [board's declaratory ruling] will not be necessary" [internal quotation marks omitted]).

In the present case, the association seeks injunctive relief to ensure that the defendant will operate the park in compliance with chapter 412 and other applicable statutes, will address any issues of noncompliance, and will not be allowed to recover from association members or other park residents any costs or expenses arising out of or relating to the present litigation. This is exactly the type of prospective relief to which we referred in *Connecticut Assn. of Health Care Facilities, Inc.*, and the other cases in which we addressed the issue because such relief would inure to the benefit of all injured association members and thus would not indispensably require the testimony of each individual member. *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 616.

Insofar as the association also seeks punitive damages, costs, and attorney's fees, they are awarded at the discretion of the court; see, e.g., *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 485–86, 871 A.2d 981 (2005) (punitive damages); *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987) (punitive damages and attorney's fees); and are considered after a statutory violation and ascertainable loss have been established. See, e.g., *Votto* v. *American Car Rental, Inc.*, supra, 485–86 ("[a] court may exercise its discretion to award punitive damages to a party who has suffered any ascertainable loss pursuant to CUTPA"); see also *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 40, 717 A.2d 77 (1998) ("[w]e have stated that § 42-110g permits a recovery of actual damages, attorney's fees and punitive damages for violations of [CUTPA]" [internal quotation marks omitted]).

In addition to the fact that punitive damages, costs and attorney's fees are discretionary, they would not require the testimony of each individual member of the association in the present case. In *Ulbrich* v. *Groth*, 310 Conn. 375, 78 A.3d 76 (2013), we stated that, "[i]n order to award punitive or exemplary damages [under CUTPA], evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious

injury, evil motive and violence." (Internal quotation marks omitted.) Id., 446. We also stated that the factors that a court should consider in determining the amount of a punitive damages award include the degree of relative blameworthiness, whether the defendant's action was taken to maximize profit, whether the wrongdoing was difficult to detect, the extent of the plaintiff's injuries, the amount of compensatory damages awarded, and whether the punitive damages award would deter the defendant and others from similar conduct, without financially destroying the defendant. Id., 454. Only one of these factors refers to compensatory damages, which are based on injuries to individual members[7] and which the association does not seek in the present case. Accordingly, because an award of injunctive relief, punitive damages, costs and attorney's fees would not require proof of injuries to the individual association members, we conclude that the Appellate Court improperly determined that the association lacked standing to assert its CUTPA claim.

To the extent the defendant persists in arguing that the testimony of all the individual association members was required to establish the existence of the alleged statutory violations and ascertainable loss, we disagree. With respect to the statutory violations, the association's complaint contained numerous allegations concerning the defendant's failure to comply with the statutory requirements relating to the physical condition of the park (count one), municipal ordinances governing mobile home parks (count two), and lease obligations imposed on mobile home park owners and tenants (count three).[8] All of these allegations appear to be directed to the defendant's failure to maintain the common areas of the park or to matters affecting all or a large number of the association members and residents, such as the condition of the roads and the proposed lease for 2008 that the defendant delivered to all of its tenants. In addition, the association presented documentary and testimonial evidence at trial in support of these allegations. This included a large number of photographs depicting the violations, several department inspection reports discussing the violations and the status of the defendant's compliance efforts, correspondence between the parties' attorneys and between the parties' attorneys and the department regarding the violations, a copy of the defendant's proposed lease for 2008, and the testimony of the department investigator, the department counsel, Doolan, and two association members, including Dickal. In view of the allegations and the evidence introduced to support them, we conclude that all of the association's individual members were not required to testify regarding their firsthand knowledge of the violations and how they were individually harmed.

We likewise conclude that the individual members' participation was unnecessary to establish ascertain-

able loss. In addition to the fact that the association's allegations were directed principally to relief relating to maintenance of the common areas and other conditions that affected the functional or aesthetic experience of all of the association members and park residents, the association specifically alleged that the defendant, by engaging in the acts and omissions described in the complaint, "has deprived, and continues to deprive, the [a]ssociation's members and other [p]ark residents of the benefits to which they are entitled as tenants, and for which they have made monthly rental payments to [the defendant]." We reiterate that " '[t]he term "loss" necessarily encompasses a broader meaning than the term "damage," ' and 'has been held [to be] synonymous with deprivation, detriment and injury.' . . . To establish an ascertainable loss, a plaintiff is 'not required to prove actual damages of a specific dollar amount.' . . . '[A] loss is ascertainable if it is measurable even though the precise amount of the loss is not known.' " (Citations omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, supra, 287 Conn. 218. Indeed, we have specifically held that "the words 'any ascertainable loss' as used in [CUTPA] do not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case." *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 612–13, 440 A.2d 810 (1981); see also *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 644, 698 A.2d 258 (1997) (proof is not required to demonstrate that particular loss occurred but, rather, that unfair trade practice occurred and that, based on reasonable inference, unfair trade practice resulted in loss). Moreover, "[when] money damages are not sought for alleged injuries to the individual members, proof relating solely to the variant experiences of each [member] resulting from the . . . [violation] at issue will not be necessary." *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 617. In other words, "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." *Hinchliffe* v. *American Motors Corp.*, supra, 614.

In the present case, the allegations that the association's members were not receiving the benefits to which they were entitled as tenants and for which they made monthly rental payments are sufficient under this standard because the alleged violations were such that they affected the mobile home park as a whole, and, therefore, all of the association members received something less than what they bargained for. We therefore conclude that the association did not require the participation of all its individual members to allege ascertainable loss for the purpose of obtaining injunctive and other equitable relief under CUTPA.

III

RELIEF ON REMAND

With respect to the appropriate relief to be ordered, in light of our conclusion that the association has standing to assert a CUTPA claim, the defendant argues that this court should remand the case to the trial court with direction to render judgment for the defendant because the association failed to prove a violation of CUTPA. The association responds that the record established clear violations of chapter 412 of the General Statutes, and, accordingly, this court should remand the case to the trial court with direction to render judgment for the association as to liability and to hold a hearing in damages. We note that the association is not seeking compensatory damages but, rather, injunctive relief, punitive damages, attorney's fees, costs and other equitable relief. We disagree with both of the proposed approaches.

The trial court dismissed the association's CUTPA claim on the ground that the department "found [the defendant] to be in compliance with chapter 412 of the General Statutes. Due to the reasons set forth in part III A of [the] court's memorandum of decision, [the] court declines to modify the [department's] finding that [the defendant] was in compliance with chapter 412 . . . . If [the defendant] was in compliance with chapter 412 . . . then there can be no per se violation of CUTPA through § 21-83e (b). Therefore, the court finds in favor of the defendant with regard to count four of the operative complaint." In part III A of its memorandum of decision, the trial court had determined with respect to count one that, because the department had concluded "that the defendant was in compliance with chapter 412 . . . and closed its file regarding the park," and because, "[a]part from the deference [the] court must give to the findings of the [department], the [association had] not provided [the] court with case law to support [the] court's modification of the [department's] findings absent an administrative appeal," the court would not modify the department's "finding that [the defendant] was in compliance with chapter 412 . . . ." In sum, the trial court concluded that the CUTPA claim failed on the ground that the department's "finding" that the defendant was in compliance with chapter 412 must be given preclusive effect in the absence of any legal authority provided by the association that would support the court's modification of the finding.

We conclude that the trial court's reasoning was flawed. The court's conclusion was based entirely on the department's informal determination that the defendant was in compliance with chapter 412 of the General Statutes and its decision to complete its investigation because "no further action [was] warranted . . . ."[9] Moreover, the association's CUTPA claim was not an appeal from an administrative proceeding but was brought separately pursuant to § 42-110g, which provides that any person who suffers any ascertainable

loss of money or property as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action to recover actual or punitive damages, attorney's fees, costs and other equitable relief. A CUTPA action thus may be brought directly in the court. Accordingly, the trial court improperly deferred to the department's conclusions because they were based on an informal investigation of the association's complaint that did not result in a final decision in a contested case subject to appeal under § 4-183 (a). In addition, the court failed to engage in the fact-finding process necessary to reach its own conclusions with respect to the association's independent CUTPA claim. The association is therefore entitled to a new trial on that claim.

The judgment of the Appellate Court is reversed only as to the association's CUTPA claim and the case is remanded to the Appellate Court with direction to remand the case for a new trial on that claim; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

[1] Prior to filing the complaint, the association filed a complaint against the defendant in October, 2005, that was dismissed in May, 2006, on the ground that the association lacked standing to sue on behalf of the individual park residents.

[2] The complaint was in the form of a letter dated September 11, 2006, from the association's attorney, in which he listed a number of maintenance violations and other claims regarding alleged retaliatory actions by the defendant against individual members of the association's board of directors. The letter concluded as follows: "I have assured the [a]ssociation and its [b]oard of [d]irectors that your office will not allow Connecticut mobile home residents to live in substandard, unhealthy, unsafe conditions, in a park run by an oppressive and unscrupulous landlord. This situation cannot continue; and I look forward to your immediate investigation."

[3] The original investigator was Gregory Carver. After Carver left his position in 2007, Keith Lombardi assumed Carver's duties.

[4] General Statutes § 21-82 (a) describes sixteen responsibilities of a mobile home park owner.

[5] The association also requested injunctive relief pursuant to General Statutes §§ 35-52, 52-570b (a) and 53-452 (a). Those statutory provisions, however, are contained in chapters relating to trade secrets and computer crimes, respectively, and thus are inapplicable for purposes of the present appeal.

[6] We note that the Appellate Court's conclusion as to the association's request for injunctive relief and its discussion of irreparable harm, which appear to be directed to the first three counts of the complaint, are not at issue in this appeal. The association, however, sought injunctive relief under CUTPA, which does not require allegations of irreparable harm. See, e.g., *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 219, 947 A.2d 320 (2008) ("[t]he fact that a plaintiff fails to prove a particular loss or the extent of the loss does not foreclose the plaintiff from obtaining injunctive relief and [attorney's] fees pursuant to CUTPA if the plaintiff is able to prove by a preponderance of the evidence that an unfair trade practice has occurred and a reasonable inference can be drawn by the trier of fact that the unfair trade practice has resulted in a loss to the plaintiff" [emphasis omitted; internal quotation marks omitted]); *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 344–45, 880 A.2d 106 (2005) (same); *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 644, 698 A.2d 258 (1997) (same); see also *Bristol Technology, Inc.* v. *Microsoft Corp.*, 114 F. Supp. 2d 59, 95 (D. Conn. 2000) ("the 'irreparable harm' standard that usually governs the decision of whether to award equitable relief is inapplicable in a CUTPA case"), vacated on other grounds, 250 F.3d 152 (2d Cir. 2001); *Conservation Commission* v. *Price*, 193 Conn. 414, 429, 430, 479 A.2d 187 (1984) (irrepara-

ble harm need not be shown in statutory injunction case because "the enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted," although "a [trial judge] . . . is not mechanically obligated to grant an injunction for every violation of law" [internal quotation marks omitted]). Accordingly, the fact that the Appellate Court did not consider the association's request for injunctive relief under CUTPA does not affect the association's ability to seek injunctive relief under CUTPA in any future proceeding.

[7] Monetary damages thus require more specific proof. See *Ulbrich* v. *Groth*, supra, 310 Conn. 441 ("[w]hen damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty" [internal quotation marks omitted]); see also *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, supra, 199 Conn. 617 ("[b]ecause money damages are not sought for alleged injuries to the individual members, proof relating solely to the variant experiences of each [member] resulting from the [state agency's] policy at issue will not be necessary").

[8] Among the violations alleged in the complaint and noted by the Appellate Court were the following acts and omissions: "[F]ailure (1) to maintain roads in the park in good condition, (2) to remove or repair abandoned mobile homes in the park that it owns, (3) to keep the park free from stagnant water and repeated flooding, (4) to keep common areas free from refuse and debris, (5) to remediate fuel oil contamination, (5) [to] maintain and repair retaining walls in the park, (6) to maintain the electrical system in the park, (7) to maintain the plumbing system in the park resulting in the continual deposit of sand, grit and rust into the faucets, sinks and tubs of the mobile homes in the park, (8) to maintain the septic system in the park that frequently results in the backup of waste into mobile homes in the park and (9) to grade lots level." *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, supra, 131 Conn. App. 584.

[9] A CUTPA claim is a statutory cause of action that is distinct from an informal administrative proceeding.